# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| BETTY WHITE, ) | |
|     Plaintiff, ) | |
| ) | CAUSE NO. 2:12-CV-1-JD-PRC |
| v. ) | |
| ) | |
| LOWE'S HOME CENTERS, INC., ) | |
|     Defendant. ) | |

## FINDINGS, REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on Defendant's Sealed Motion to Enforce Settlement and Dismiss with Prejudice [DE 21], filed by Defendant Lowe's Home Centers, Inc. ("Lowe's") on May 24, 2012.

On June 27, 2012, District Court Judge Jon DeGuilio entered an Order [DE 25] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court grant the motion.

## PROCEDURAL BACKGROUND

On January 3, 2012, Plaintiff Betty White filed a Complaint against Defendant Lowe's, alleging a claim under Title VII for sexual harassment and intimidation by her supervisor during her employment with Lowe's as well as claims for "negligent hiring/supervision/retention" and intentional infliction of emotional distress. On March 2, 2012, Ms. White filed an Amended Complaint to properly name Lowe's. On March 5, 2012, Lowe's filed a motion asking the Court to correct the spelling of Lowe's name in the caption, which the Court granted on March 7, 2012.

On May 24, 2012, Lowe's filed a Motion to Seal and the instant Sealed Motion to Enforce Settlement and Dismiss with Prejudice. On May 31, 2012, the Court received a letter from Ms. White, personally, and not through counsel, in which Ms. White asked permission to proceed with this case pro se. On June 4, 2012, the Court issued an order, declining to take action on the letter because Ms. White continued to be represented by counsel.

On June 7, 2012, Ms. White's attorney, Jewell Harris, Jr., filed a Motion to Withdraw Appearance.

On June 27, 2012, Judge DeGuilio issued an order referring the Motion to Enforce Settlement and Dismiss with Prejudice to the undersigned Magistrate Judge. In the Order, Judge DeGuilio also noted that Attorney Harris' Motion to Withdraw asks both for leave of Court to withdraw his appearance and also asks the Court to enforce the attorney fee agreement entered into between his firm and Ms. White. Judge DeGuilio denied with leave to refile that portion of the Motion to Withdraw seeking enforcement of the attorney fee agreement.

On June 2, 2012, the Court set the Motion to Enforce Settlement and Dismiss with Prejudice for a hearing for July 12, 2012, ordering Ms. White, Attorney Harris, and counsel for Lowe's to be present in person. On July 5, 2012, Attorney Harris filed a motion to continue the hearing, which was granted on July 10, 2012, and the hearing was reset to July 16, 2012.

On July 16, 2012, the Court held a motion hearing on the Motion to Seal, the Motion to Enforce Settlement and Dismiss with Prejudice, and the Motion to Withdraw. At the hearing, the Court granted the Motion to Seal, ordering that the Motion to Enforce Settlement and Dismiss with

Prejudice be sealed and that the hearing be sealed as well.[1] The Court took evidence and heard the testimony of Ms. White and Attorney Harris.

On July 17, 2012, Lowe's filed a Citation of Supplemental Authority.

## FACTUAL BACKGROUND

On March 13, 2012, counsel for Lowe's sent Attorney Harris, Ms. White's attorney, a letter that explained Lowe's view of the case and concluded with an offer of settlement. The final paragraph of the letter provided that Lowe's had authorized counsel to extend a settlement offer of $[A], subject to several conditions.[2] *See* Def. Mot., Exh. A. This offer amount of $[A] was not accepted by Ms. White.

On May 3, 2012, counsel for Lowe's sent an email to Attorney Harris regarding the parties' settlement negotiations. Within that correspondence, counsel for Lowe's stated, "I now extended a final offer of [$B] with the same terms previously set forth." Def. Mot., Exh. B.[3] Later on May 3, 2012, Attorney Harris called counsel for Lowe's and orally accepted the offer of settlement. Attorney Harris also responded to Lowe's "final offer" by email, writing "Deal." In the same email Attorney Harris wrote, "How soon can your client process payment?"

---

[1] Although the motion and the hearing were sealed for good cause because of the frequent inclusion of the terms of the confidential settlement agreement, this Report and Recommendation is not sealed as the Court has redacted the confidential terms of the agreement to the extent it was necessary to include them. *See Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000) ("Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination).").

[2] The Amount of $[A] is found in the first line of the second full paragraph on the second page of Exhibit A to Defendant's Sealed Motion to Enforce and Dismiss With Prejudice. *See* Def. Mot., Exh. A, p. 2 ("My client has authorized me to extend $[A], . . . .").

[3] The Amount of $[B] is found in the third line of the May 3, 2012, 5:14 p.m. email sent by "Kathleen Anderson" to "Jewell" on the first page of Exhibit B to Defendant's Sealed Motion to Enforce and Dismiss With Prejudice. *See* Def. Mot., Exh. B.

3

On May 7, 2012, counsel for Lowe's sent an email to the Court's case management deputy clerk, copied to Attorney Harris, explaining that the "parties cannot state in the public record that a settlement has been reached" but could file a notice indicating that a stipulation for dismissal was forthcoming in the immediate future.

Later on May 7, 2012, Attorney Harris responded to that email, informing the deputy clerk that "we agree with the representations made by" counsel for Lowe's.

On May 8, 2012, counsel for Lowe's sent an email to Attorney Harris to confirm that it was acceptable to "go ahead and file the notice" with the Court. Attorney Harris responded by asking counsel for Lowe's to call him. During the ensuing phone call, Attorney Harris informed counsel for Lowe's that Ms. White now planned to decline the settlement offer.

Counsel for Attorney Harris followed up on that conversation with an email later on May 8, 2012, indicating that "I cannot approve the notice to be filed with court. Earlier today I advised [counsel] that there were issues that came up with my client that I have not been able to resolve. Ms. White has asked that I withdraw from her case. I believe that we should request a conference call with the Magistrate. Please advise." Def. Br., Exh. D, p. 2.

On May 10, 2012, the Court held a status conference, which was conducted on the record. At the conference, Attorney Harris stated that his client had "approved the settlement." Def. Br., Exh. E, p. 3 (status conference transcript). Attorney Harris further stated that he told counsel for Lowe's that "we had an agreement on the amount so they could start preparing the paperwork." *Id.* at p.4. Attorney Harris then stated that "[a] few days later" he received an email from Ms. White "basically indicating that she didn't want to go forward with the settlement." *Id.* at p. 4. This was an "absolute surprise" for Attorney Harris. At the status conference, Attorney Harris stated that Ms.

4

White's disagreement was not over the amount of the settlement offer but rather that she was telling him that she "disagrees with the idea of settling altogether." *Id*. at 5.

At the hearing on July 16, 2012, Ms. White provided the following testimony. She hired Attorney Harris on a contingency basis and did not pay him any money for his representation. Attorney Harris sent her a copy of the March 2012 letter from Lowe's offering settlement for $[A], she read the letter, and she responded to Attorney Harris by phone that she would not accept the offer. She disagreed with the waiver and confidentiality terms of the proposed settlement. Months later, Ms. White received a phone call from Attorney Harris communicating a $[B] offer from Lowe's. She asked Attorney Harris to counter with $[C] and asked Attorney Harris to get back to her about what the conditions of the settlement offer were.[4] Attorney Harris told her that he would withdraw his appearance if she did not accept the offer and that he felt she was wronged but that he could not win the case. She felt pressured to settle before discovery deadlines had to be extended, and she would have preferred to wait to discuss settlement until after discovery.

However, Ms. White testified that, during that same conversation on May 3, 2012, she did communicate acceptance of Lowe's $[B] settlement offer to Attorney Harris. She testified that she accepted the $[B] offer "if the other conditions are met." In her mind, she considered the "conditions" to be further discussion of additional settlement for damages of front pay and back pay. She was remembering a previous discussion that she and Attorney Harris had regarding front pay and back pay. Yet, she testified that she did *not* talk to Attorney Harris about front pay and back pay during their conversation on May 3, 2012. She believed that the offer of $[B] was only payment for her to maintain the confidentiality of the settlement.

---

[4] The Amount of $[C] is found in the recording of the July 16, 2012 sealed hearing.

Ms. White testified that Attorney Harris never got back to her regarding the other terms of the settlement. She then emailed Attorney Harris, asking him to contact her about the terms of the settlement. Attorney Harris responded that the settlement had already been accepted. She felt that Attorney Harris should have declined the $[B] settlement offer because front pay and back pay had not been included. She has calculated that the total back pay and front pay minus the unemployment compensation she received would total $350,000. She is still open to settlement.

At the July 16, 2012 hearing, Attorney Harris gave the following testimony. The March 13, 2012 letter from counsel for Lowe's outlined Lowe's defense, which raised issues for Attorney Harris regarding the feasibility of Ms. White's claims. He took the initial $[A] settlement offer to Ms. White, which she rejected. He communicated the rejection to counsel for Lowe's. Through further negotiations between counsel, counsel for Lowe's reluctantly agreed to get authority to settle for $[B]. Attorney Harris felt that $[B] was a fair settlement amount. Lowe's then extended a settlement offer of $[B] and required an immediate response before discovery continued.

Attorney Harris testified that Ms. White said "yes" to the $[B] settlement offer made by Lowe's. There was no discussion by Ms. White of any other conditions on the day of that conversation. Attorney Harris stated that during their original consultation, before the Complaint was filed, he and Ms. White had discussed back pay and front pay. He believes that, on May 3, 2012, he communicated to her that the $[B] offer was to settle the entire case. He understood Ms. White's reference to the same "conditions" they had previously discussed to mean the conditions of the March 2012 settlement offer, except for the dollar amount of the offer, and one additional negotiated term agreed to by Lowe's. He did not understand "conditions" to include back pay and

6

front pay. Attorney Harris felt the terms of the March 2012 proposed settlement agreement were customary.

Attorney Harris believed there was agreement on accepting the $[B] offer. He communicated the acceptance to Lowe's and asked that the documents be circulated. Subsequently, Ms. White contacted Attorney Harris and told him she did not want to accept the settlement offer. He then contacted Lowe's counsel and explained that Ms. White did not want to go forward with the settlement. Attorney Harris does not remember receiving a copy of the proposed written settlement agreement.

Attorney Harris testified that he felt that Ms. White had given him actual authority to settle this case and that she had accepted the $[B] offer verbally. Attorney Harris felt that Ms. White understood that he was the sole negotiator with Lowe's.

## ANALYSIS

In the instant motion, Lowe's asks the Court to enforce the settlement agreement that it believes was entered into by Ms. White to settle the case for $[B].

Oral agreements to settle a Title VII claim are enforceable in federal court and need not be reduced to writing. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 455 (7th Cir. 1986). "Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Id.*; *see also Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982) (citing *Alexander v. Garnder-Denver Co.*, 415 U.S. 36 n. 15 (1974)) ("Where a plaintiff knowingly and voluntarily agrees to settle his claims, he is bound by his agreement."). The question of whether the parties entered into an enforceable oral

settlement agreement in a federal suit is governed by state law–in this case, that of Indiana. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (Title VII) (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (holding that any uncertainty over whether federal or state law applies to the enforcement of the settlement of a federal suit has been "dispelled; it is state law").

In its written motion, Lowe's argues that it appears Ms. White has a case of buyer's remorse and now is unhappy with the settlement amount, which appears to be based on Attorney Harris' statements at the May 10, 2012 status conference that he believed that Ms. White's disagreement was not over the amount of the settlement but rather that she was telling him that she "disagrees with the idea of settling altogether." However, at the hearing on July 16, 2012, Ms. White's testimony revealed that she had agreed verbally to the $[B] settlement amount but that, in her mind, the $[B] amount was only to ensure the confidentiality of the settlement and that, in her mind, the issue of settling her claims for back pay and front pay had yet to be negotiated. As argued at the hearing, Lowe's now contends that Attorney Harris had actual and implied authority to settle the case for $[B] subject to the terms set out in the original March 13, 2012 agreement.

Under Indiana law, in order to bind a client to a settlement agreement, "the attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power." *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998); *see Pohl v. United Airlines*, 213 F.3d 336, 338 (7th Cir. 2000) (citing *Koval* for this statement of the law). When settlement occurs in an out of court proceeding, an attorney does not have implied or apparent authority simply because he has been retained. *Id*. Authority, which is the "power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's

8

manifestations of consent to him," can be express or implied. *Id.* at 1302 (quoting Restatement (Second) of Agency § 7 (1958)). The authority may be given "by words or other conduct, including acquiescence." *Id.* As for implied authority, the Supreme Court explained that it "can arise from words used, from customs, or from the relations of the parties. The agent is authorized if the agent is reasonable in drawing an inference from the principal's actions that the principal intended to confer authority." *Id.* (citing Restatement (Second) of Agency § 7 (1958)). Moreover, "[t]he client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement." *Id.* at 1303 n. 6; *see also Pohl*, 213 F.3d at 339 ("The testimony of Pohl's attorney, which the court credited, would have been enough to establish implied authority to settle, even if express authority had not been found.").

The Court finds that Ms. White gave Attorney Harris express and implied authority to settle during their phone conversation on May 3, 2012, in which she told Attorney Harris that she agreed to the $[B] settlement amount subject to the "conditions." Ms. White testified that she did accept the $[B] settlement offer. Although Ms. White has testified that what she meant by other "conditions" was additional negotiation for settlement money for back pay and front pay, she did not communicate this understanding to Attorney Harris. There was no discussion during that conversation of back pay and front pay. The discussions between Ms. White and Attorney Harris regarding back pay and front pay occurred during the initial consultation on the case. At the time of their May 3, 2012 conversation, the case had moved into a new phase of settlement negotiation. In the interim, an initial settlement offer in March 2012, which contained not only a settlement offer but also the technical terms of settlement, had been communicated to Ms. White and was considered by Ms. White. It was reasonable for Attorney Harris to believe on May 3, 2012, that Ms. White's

9

reference to other "conditions" of settlement was to the terms of settlement set forth in the first offer in March 2012. Attorney Harris acted reasonably under the circumstances in relying on Ms. White's words and manifestations to him to communicate acceptance of the $[B] settlement offer to Lowe's. Thus, Ms. White is bound by the settlement.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Sealed Motion to Enforce Settlement Agreement and Dismiss With Prejudice [DE 21]. The Court further **RECOMMENDS** that, should the District Court adopt this Report and Recommendation, the District Court:

(1) Declare that the settlement agreement of May 3, 2012, was entered into knowingly and voluntarily and is fully enforceable and, in particular, provides that Lowe's will pay Ms. White $[B] "minus applicable taxes/withholdings, to [Plaintiff] in exchange for a full release; a confidentiality clause (with a 50% liquidated damages provision) addressing all negotiations, terms, and the fact of any settlement; waiver of reinstatement; no admission of liability; dismissal of the lawsuit; and other standard terms;"

(2) Order Ms. White to execute the document found at Exhibit F of Lowe's sealed Motion [DE 21], which memorializes the already enforceable settlement agreement; and

(3) Order this matter be dismissed with prejudice within 28 days of the Court's Order adopting the Report and Recommendation regardless of whether Ms. White executes any document.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 19th day of July, 2012.

        s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Betty Jane White Evans at    (1) 2130 Whipperwill Road, Kileen, TX, 76542 and
                                      (2) 416 Taft Street, Gary, IN, 46404