UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BETTY WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:12-CV-001-JD-PRC |
| | ) |
| LOWE'S HOME CENTERS, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION and ORDER**

This matter comes before the Court on a Report and Recommendation [DE 31] from Magistrate Judge Paul R. Cherry. The Court hereby DENIES the Plaintiff's objection [DE 33] to the Report and Recommendation and ADOPTS the Report and Recommendation in its entirety. Thus, Defendant's Sealed Motion to Enforce Settlement and Dismiss with Prejudice [DE 21] is GRANTED for the reasons that follow.[1]

**I. BACKGROUND**

Plaintiff Betty White filed a complaint against her former employer Defendant Lowe's Home Centers, Inc. on January 3, 2012 alleging Title VII claims of sexual harassment and discrimination, negligent hiring/supervision/retention, and negligent infliction of emotional distress, as amended [DE 1, 9, 13]. On March 13, 2012, counsel for Lowe's sent Ms. White's counsel, Attorney Jewell Harris, Jr., a letter offering a settlement in a confidential amount of $[A][2] "minus applicable

---

[1] While Defendant's motion was filed under seal to maintain the confidences of the settlement agreement, this Order is not sealed because any confidential terms of the agreement have been redacted.

[2] The Amount of $[A] is found in the first line of the second full paragraph on the second page of Exhibit A to Defendant's Sealed Motion to Enforce and Dismiss With Prejudice [DE 21-1, Ex. A at 2 ("My client has authorized me to extend $[A], . . . .").

taxes/withholdings, to [Plaintiff] in exchange for a full release; . . . and other standard terms" [DE 21-1, Ex. A at 2]. The offer was open for one week but was rejected by Ms. White [DE 21 at 1]. Then on May 3, 2012 at 5:14 p.m., counsel for Lowe's sent an email to Attorney Harris stating in relevant part: "You indicated a potential final offer of $[B].[3] I can stretch my client [Lowe's] to that amount. That is the number we need to reach, subject to the same terms previously set forth. I now extend a final offer of $[B] with the same terms previously set forth . . . [p]lease advise by 5:00 p.m. tomorrow." [DE 21-2, Ex. B at 1]. Attorney Harris responded via email on the same day at 6:56 p.m. indicating "Deal" and further inquired "How soon can your client process payment?" *Id*. Attorney Harris also called counsel for Lowe's on May 3, 2012, to orally accept the $[B] offer of settlement [DE 21 at 2].

On May 7, 2012, counsel for Lowe's sent an email to the Court's case management deputy clerk, copied to Attorney Harris, explaining that the "parties cannot state in the public record that a settlement has been reached," but could file a notice indicating "this matter will soon be dismissed by stipulation of the parties" [DE 21-3, Ex. C at 1]. Later the same day, Attorney Harris responded to the email, informing the deputy clerk that "we agree with the representations made by" counsel for Lowe's. *Id*.

The next day, May 8, 2012, counsel for Lowe's contacted Attorney Harris by email to confirm that it was acceptable to file the dismissal notice with the Court [DE 21-4, Ex. D at 1]. Attorney Harris responded by making a request that counsel for Lowe's call him. *Id*. During the ensuing phone call, Attorney Harris informed counsel for Lowe's that Ms. White now wished to

---

[3]The Amount of $[B] is found in the fifth sentence of the email sent by defense counsel to Plaintiff on May 3, 2012, as indicated on the first page of Exhibit B to Defendant's Sealed Motion to Enforce and Dismiss With Prejudice [DE 21-2, Ex. B at 1].

2

decline the final settlement offer of $[B] [DE 21 at 3]. Later on May 8, 2012, Attorney Harris followed up the phone conversation with an email stating that "I cannot approve the notice to be filed with court. Earlier today I advised [counsel for Lowe's] that there were issues that came up with my client that I have not been able to resolve. Ms. White has asked that I withdraw from her case. I believe that we should request a conference call with the Magistrate. Please advise." [DE 21-4, Ex. D at 2].

The Magistrate Judge held a status conference on May 10, 2012, which was conducted on the record [DE 18]. At the conference, Attorney Harris stated that his client had "approved the settlement" [DE 21-5, Ex. E at 3]. Attorney Harris further stated he immediately told counsel for Lowe's "we had an agreement on the amount so they could start preparing the paperwork." *Id.* at 4. However, "a few days later" Attorney Harris received an email from Ms. White "basically indicating that she didn't want to go forward with the settlement," which was an "absolute surprise" to him. *Id.* Attorney Harris also stated at the status conference that Ms. White's disagreement was not over the amount of the settlement offer or particular terms of an agreement, but rather she had a "[disagreement] with the idea of settling altogether" and wanted to litigate the matter as a matter of "principle." *Id.* at 5.

On May 24, 2012, Lowe's filed a Motion to Seal and a Sealed Motion to Enforce Settlement and Dismiss with Prejudice [DE 20; DE 21]. On May 31, 2012, the Court received a letter from Ms. White, personally, and not through counsel, in which Ms. White asked permission to proceed *pro se* [DE 22]. The Magistrate Judge issued an Order on June 4, 2012, declining to take action on the letter because Ms. White continued to be represented by counsel [DE 23]. Thereafter, Attorney Harris filed a Motion to Withdraw his appearance on June 7, 2012 [DE 24].

3

On June 27, 2012, the undersigned issued an order referring the Motion to Enforce Settlement and Dismiss with Prejudice for a Report and Recommendation and reiterating that the Magistrate Judge would decide non-dispositive matters, including Attorney Harris' request to withdraw [DE 25].

On July 16, 2012, the Magistrate Judge held a sealed hearing on the Motion to Seal, the Motion to Enforce Settlement and Dismiss with Prejudice, and the Motion to Withdraw [DE 29]. At the hearing, the Magistrate Judge granted the Motion to Seal. *Id*. The Court took evidence and heard the sworn testimony of Ms. White and the testimony of Attorney Harris.[4]

In summary, Ms. White testified she hired Attorney Harris on a contingency basis and did not pay him any money for his representation [DE 29; DE 31]. She acknowledged that Attorney Harris sent her a copy of the March 2012 letter from Lowe's offering settlement for $[A], which she read. *Id*. Ms. White responded to Attorney Harris by phone indicating that she would not accept the offer because she disagreed with the waiver and confidentiality terms of the proposed settlement. *Id*. Months later, Ms. White admitted that she received a phone call from Attorney Harris communicating a final offer of $[B] from Lowe's. *Id*. Ms. White testified that Attorney Harris told her that he would withdraw his appearance if she did not accept the offer, and that he felt she was wronged, but that he could not win the case. *Id*. Ms. White felt pressured to settle before discovery deadlines had to be extended and she would have preferred to wait to discuss settlement until after discovery. *Id*. It was her initial testimony that she asked Attorney Harris to get back to her about what the conditions of the settlement offer were [DE 29; DE 31]. However, Ms. White also testified

---

[4]As an officer of the Court with a duty to tell the truth, Attorney Harris was not given an oath but he was reminded of his obligation to be honest.

that during the same conversation on May 3, 2012, she *did* communicate acceptance of Lowe's $[B] final settlement offer to Attorney Harris. *Id*. She explained that she accepted the settlement offer if the other conditions were met, and in her mind, the other "conditions" to be further discussed were for additional damages of front pay and back pay, which she had discussed with Attorney Harris at one point in an initial consultation. *Id*. She believed that the settlement offer was only payment for her to maintain the confidentiality of the settlement. *Id.* Yet, whatever reservations Ms. White had were not communicated to Attorney Harris, and Ms. White admitted that she did *not* talk to Attorney Harris about front pay and back pay during their conversation on May 3, 2012. *Id*.

Ms. White accused Attorney Harris of never getting back to her regarding the other terms of the settlement, including a counteroffer that she apparently wanted made [DE 29; DE 31]. When she emailed Attorney Harris requesting that he contact her about the terms of the settlement, he responded that the settlement had already been accepted. *Id*. She felt that Attorney Harris should have declined the settlement offer because front pay and back pay had not been included. *Id*. Ms. White calculated that her total front pay and back pay award, minus unemployment compensation, would total $350,000. *Id*. She admitted that she is still open to settlement. *Id*.

At the July 16, 2012 hearing, Attorney Harris testified that the March 13, 2012 letter from counsel for Lowe's outlined Lowe's defense, which raised issues for Attorney Harris regarding the feasibility of Ms. White's claims [DE 29; DE 31]. He took the initial $[A] settlement offer to Ms. White, which she rejected. *Id*. He then communicated the rejection to counsel for Lowe's. *Id*. Through further negotiations between counsel, counsel for Lowe's reluctantly agreed to get authority to settle for $[B], which Attorney Harris felt was a fair settlement amount. *Id*. Lowe's then extended a final settlement offer of $[B] based on the same terms and required an immediate

5

response before discovery continued. *Id.*

Attorney Harris testified that Ms. White would have preferred more money but she said "yes" to the settlement offer of $[B] made by Lowe's [DE 29; DE 31]. Ms. White did not discuss any other conditions, including front pay or back pay, on the day of that conversation. *Id*. Attorney Harris stated that during their original consultation, before the complaint was filed, he and Ms. White had discussed the type of remedies available which included front pay and back pay. *Id*. However, the case had subsequently reached settlement discussions and he believed that on May 3, 2012, he communicated to her that the offer was a full and final settlement of the entire case. *Id*. Because the exact terms of the written settlement agreement (other than the monetary award) had not been circulated among the attorneys yet, Attorney Harris understood Ms. White's reference to other "conditions" to mean the other conditions of the March 2012 settlement offer (other than the dollar amount). *Id*. He further testified that he did not understand "conditions" to include front pay and back pay, and he felt the terms of the original March 2012 proposed settlement offer were customary [DE 29; DE 31]. Mr. Harris did admit that he thought he had negotiated that the funds would be paid through a 1099 [DE 29; DE 31]; however, Lowe's written offer was based on the "same terms" previously set forth in the March 2012 settlement offer [DE 21-2 at 1].

Attorney Harris believed there was an agreement on May 3 accepting the $[B] final settlement offer subject to the terms of the March 2012 settlement offer [DE 29; DE 31]. He communicated the acceptance to Lowe's and asked that the documents be circulated. *Id*. Subsequently, Ms. White contacted Attorney Harris and told him she did not want to accept the settlement offer. *Id*. He then contacted Lowe's counsel and explained that Ms. White did not want to go forward with the settlement. *Id*.

6

Attorney Harris testified that he felt that Ms. White had given him "actual authority" to settle this case and that she had definitely accepted the settlement offer verbally [DE 29; DE 31]. Ms. White led Attorney Harris to believe that he could settle the case by reporting to him that she would accept $[B]. Attorney Harris felt that Ms. White understood that he was the sole negotiator with Lowe's. *Id.*

On July 19, 2012, Magistrate Judge Paul R. Cherry entered his Report and Recommendations in which he recommended that the undersigned grant the Sealed Motion to Enforce Settlement and Dismiss with Prejudice [DE 31]. In his report, Magistrate Judge Cherry further recommended that the District Court:

> (1) Declare that the settlement agreement of May 3, 2012, was entered into knowingly and voluntarily and is fully enforceable and, in particular, provides that Lowe's will pay Ms. White $[B] "minus applicable taxes/withholding, to [Plaintiff] in exchange for a full release; a confidentiality clause (with a 50% liquidated damages provision) addressing all negotiations, terms, and the fact of any settlement; waiver of reinstatement; no admission of liability; dismissal of the lawsuit; and other standard terms;
> 
> (2) Order Ms. White to execute the document found at Exhibit F of Lowe's sealed Motion [DE 21], which memorializes the already enforceable settlement agreement; and
> 
> (3) Order this matter be dismissed with prejudice within 28 days of the Court's Order adopting the Report and Recommendation regardless of whether Ms. White executes any document.

[DE 31 at 10-11]. Thereafter, on July 20, 2012, Judge Cherry granted Attorney Jewell Harris, Jr.'s Motion to Withdraw [DE 32].

On July 31, 2012, Ms. White filed a *pro se* "Response to Recommendation" [DE 33] which the Court liberally construes—as it must with *pro se* filings—as an objection to the Report and Recommendation. Ms. White indicated that she has "no overall objection to the recommendation

to force settle," but then she objected to "the settlement and report" because payment under the settlement agreement was "to be made on [a] 1099 not w-2" with no tax withholdings, she is entitled to front pay and back pay, and there was no written documentation of the May 3, 2012 settlement agreement [DE 33]. Due to these objections, Ms. White requested the Court: (1) declare that a verbal settlement agreement was not entered into on May 3, 2012; (2) deny the dismissal with prejudice; (3) order the matter be sent through discovery and resolved by way of trial; and (4) decline to order Ms. White to execute the settlement agreement found at Exhibit F of Lowe's sealed motion. *Id.* Regardless of Ms. White's statement that she has "no overall objection," she has effectively objected to the Report and Recommendations in its entirety. *Id.* These issues are now before the Court.

## II. DISCUSSION

The district court has discretion to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil Procedure 72(b), the district court must undertake a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).

The question of whether the parties entered into an enforceable oral settlement agreement in a federal suit is governed by state law–in this case, that of Indiana. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (Title VII) (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (holding that any uncertainty over whether federal or state law applies to the enforcement of the settlement of a federal suit has been "dispelled; it is state law"); *see also Zilberstein v. College*, No. 07-1932, 286 Fed.Appx. 938 (7th Cir. July 7, 2008). But because this

8

is an employment discrimination case brought under federal law, any settlement agreement must also be "knowing and voluntary" under federal law. *See Dillard v*, 483 F.3d at 507 ("[a]lthough *Lynch* held that the issue of whether parties have entered into an enforceable settlement of a federal claim is governed by state law, in the employment discrimination context, a requirement that the settlement be "knowing and voluntary" has been added as a matter of federal law because of the important 'federal policy underpinnings' of employment discrimination law") (citation omitted). When an employee challenges whether a settlement was knowing and voluntary, a court must examine the 'totality of the circumstances' surrounding its execution; however, where plaintiff is represented by chosen counsel throughout negotiations and settlement, the settlement agreement is presumptively informed and willing, absent circumstances such as fraud or duress." *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007) (citations omitted); *see Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) ("[a]bsent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute").

Under Indiana law, "[s]ettlement agreements are governed by the same general principles of contract law as any other agreement." *Hampton v. ITT Commc'n Sys. Div.*, No. 1:10-cv-291, 2012 WL 2064510 at 3-4, (N.D. Ind. June 7, 2012) (Moody, J.) (quoting *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011) (noting all that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required)). The required elements to form a valid contract in Indiana are an offer, an acceptance, consideration, and a manifestation of mutual assent. *Id*. (citing *In re Paternity of M.F.*, 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010)). The party asserting

9

the existence of the contract bears the burden of proving its existence. *Id*. (citing *OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.*, 657 N.E.2d 117, 125 (Ind. Ct. App. 1995); *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994)). Indiana "strongly favors settlement agreements[,]" and "it is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Id*. (citing *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003)). Additionally, oral agreements to settle a Title VII claim are enforceable in federal court under Indiana law and need not be reduced to writing. *Glass*, 788 F.2d at 454; *Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000).

Under Indiana law, in order to bind a client to a settlement agreement "the attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power." *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998); *see Pohl v. United Airlines*, 213 F.3d 336, 338 (7th Cir. 2000) (citing *Koval*). When settlement occurs in an out of court proceeding, an attorney does not have implied or apparent authority simply because he has been retained. *Id*. Authority, which is the "power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him," can be express or implied. *Koval*, 693 N.E.2d at 1302 (quoting Restatement (Second) of Agency § 7 (1958)). The authority may be given "by words or other conduct, including acquiescence." *Id*. As for implied authority, the Indiana Supreme Court explained that it "can arise from words used, from customs, or from the relations of the parties. The agent is authorized if the agent is reasonable in drawing an inference from the principal's actions that the principal intended to confer authority." *Id*. Moreover, "[t]he client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement." *Koval*, 693

N.E.2d at 1303 n. 6; *see also Pohl*, 213 F.3d at 339 ("The testimony of Pohl's attorney, which the court credited, would have been enough to establish implied authority to settle, even if express authority had not been found.").

It has also been held that a refusal to sign a document memorializing an agreed upon settlement does not invalidate the agreement. *Pohl v. United Airlines, Inc.,* 110 F. Supp 2d 829, 840 (S.D. Ind. 1999) (settlement enforced despite plaintiff's refusal to sign document memorializing the agreement), *aff'd* 213 F.3d 336, 340 (7th Cir. 2000) ("misplaced belief that he could back out of the settlement at any time prior to signing it does not entitle him to legal relief from a settlement negotiated with actual authority by his attorney"); *see Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) ("The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary purpose."). Further, it has been held that "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient—'if a party to a Title VII suit who has previously authorized a settlement changes his mind . . ., that party remains bound by the terms of the agreement.'" *Glass,* 788 F.2d at 454-55 (citation omitted); *see Baptist*, 481 F.3d at 492.

The Magistrate Judge found that Attorney Harris had both express and implied authority from Ms. White to accept the settlement agreement and that Ms. White is bound by the oral agreement she entered into on May 3, 2012 when she agreed to a settlement amount of $[B] subject to "conditions" [DE 31]. But Ms. White did not discuss any other conditions, including front pay or back pay, on the day of the agreement and it was reasonable for Attorney Harris to believe on May 3 that the reference to other "conditions" of settlement meant the terms of the March 2012 settlement offer. *Id*. And thus, Attorney Harris acted reasonably in relying on Ms. White's words

to accept the settlement offer of $[B]. *Id.* Ms. White disagrees with the Magistrate Judge's findings and recommendations [DE 33].

This Court agrees with the Magistrate Judge and finds that on May 3, 2012, Ms. White gave Attorney Harris both express and implied authority to settle when she stated during their phone conversation that she agreed to the $[B] final settlement offer if other "conditions" were met. Ms. White's testimony confirms that she *did* verbally accept the final settlement offer of $[B], and that she did *not* communicate to Attorney Harris what she meant by "conditions," let alone indicate that she was referring to additional negotiation for more settlement money to include front pay and back pay or tax consequences. The only time Ms. White and Attorney Harris ever discussed front pay and back pay was during the initial consultation on the case prior to the complaint's filing—long before settlement discussions began. Thus, it was clear from the circumstances that the settlement offer of $[B] was the extent of Ms. White's bargained for consideration. *See Baptist*, 481 F.3d at 492 ("[t]here is no merit to plaintiffs' contention that the agreement was not supported by consideration merely because it did not provide them with every remedy to which they believe they were entitled."). Further, an initial settlement offer containing the technical terms of settlement had been communicated to and considered by Ms. White in March 2012. Ms. White was aware of these terms, which she accepted when she admittedly accepted the May 2012 offer which was explicitly subject to the "same terms." Thus, under the circumstances of this case, it was reasonable for Attorney Harris to believe that Ms. White was referring to the terms of settlement set forth in the March offer, when she referenced other "conditions" during their May 3 conversation. Even if Ms. White subjectively thought she might later negotiate for a larger sum of money to include front and back pay or tax consequences, because Attorney Harris had both express and implied authority to

12

settle on May 3 and acted reasonably under the circumstances in relying on Ms. White's words and manifestations to him communicating acceptance of the final settlement without discussion of any modifications, Ms. White is bound by the settlement agreement, *see Koval*, 693 N.E.2d at 1302-03, as memorialized by Exhibit F of Lowe's sealed motion [DE 21-6].

Should it not be clear from the above discussion, the Court also concludes that the terms of the settlement agreement are the terms outlined in the May 3 email from Lowe's attorney to Attorney Harris which denotes that $[B] was offered "subject to the **same terms previously set forth**. I now extend a final offer of $[B] with the **same terms previously set forth** . . . [p]lease advise by 5:00 p.m. tomorrow." [DE 21-2, Ex. B at 1] (emphasis added). In relevant part, the terms previously set forth in the March offer indicated that the settlement amount offered was to be subject to **"applicable taxes/withholdings, to [Plaintiff] in exchange for a full release"**[5] [DE 21-1, Ex. A at 2] (emphasis added). Ms. White acknowledged that her attorney informed her of the May 3 offer and she expressly agreed to it. Her attorney credibly confirmed this fact by testifying that Ms. White definitely accepted the settlement offer verbally. Thereafter, Attorney Harris responded to Lowe's (after receiving Ms. White's authority to settle) by confirming the "[d]eal." [DE 21 at 2; DE 21-2, Ex. B at 1]. The subsequent communications between Attorney Harris and Lowe's counsel, as well as counsels' written representations to the Court, confirm that all of the elements of a contract under Indiana law were in fact reached on May 3. In fact, these emails would make little sense if the parties had not reached an agreement, and there is ample evidence to support the

---

[5] And as an aside, whether a settlement payment is taxable, and whether an IRS Form 1099 must be issued, is not subject to the parties' discretion, and thus is not material. *See Mia v. Potter*, 282 Fed.Appx. 478, 479 (7th Cir. 2008) (enforcing oral settlement agreement where the plaintiff "complain[ed] that the written [settlement] contract specifies that the Postal Service will issue an IRS Form 1099 for its payment to her and that she never agreed that her settlement payment would be taxable").

13

conclusion that a settlement agreement including the essential terms of the contract was reached on that day.

To the extent Ms. White contends that she did not knowingly and voluntarily enter into the settlement, based on her mistaken understanding concerning other "conditions" to be negotiated, including an award of front and back pay and no tax deduction on the award, the argument is unavailing considering the totality of the circumstances.[6]

First, Ms. White was represented by counsel throughout negotiations and settlement, which means that the settlement agreement is presumptively informed and willing, absent circumstances such as fraud or duress. *Baptist*, 481 F.3d at 490 (citing *Riley*, 881 F.2d at 373). If Ms. White is attempting to overcome this presumption by claiming that her attorney engaged in misconduct, either by failing to adequately explain the terms of the settlement or by persuading her to enter into a settlement that she believes was not in her best interests, it has been held that the adequacy or propriety of counsel's advice is irrelevant to the question of whether a settlement was knowing and voluntary. *Baptist*, 481 F.3d at 490-91 (noting that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping [a] suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.") (citation omitted). Moreover, there is no evidence to suggest that her attorney did anything

---

[6]In assessing the totality of the circumstances, the Seventh Circuit has stated that relevant factors include but are not limited to: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the agreement; (5) whether the employee actually read the release before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part. *Baptist*, 481 F.3d at 491 n.3 (citation omitted).

14

improper.

Second, there is no evidence to suggest that the oral agreement made in May was the result of mistake or accident or that Ms. White was under duress or coerced to assent to it. *See Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989). Ms. White understood the terms of the settlement offer in March, as she did not agree with the confidentiality clause and waiver given the amount of money offered. Almost two (2) months later she ultimately accepted the same terms in May, when more money was offered—therefore, she had sufficient time to consider the terms in consultation with her attorney. Ms. White was also involved in the negotiations, having rejected the first offer in hopes of receiving a better one—which she ultimately did receive despite the legal pitfalls anticipated by Attorney Harris which made Ms. White's case a relatively weak one. No misconduct on the part of Lowe's is supported in the record. Instead, what the record shows is that Ms. White confirmed the terms of the settlement agreement after consulting with counsel and made a deal, and only thereafter did she change her mind about settling the case out of "principle" and for want of more money. But where a party has knowingly and voluntarily agreed to settle her claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement. *See Glass*, 788 F.2d at 454; *Lyles v. Commercial Lovelace Motor Fright, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982). Accordingly, because the parties entered into an enforceable oral settlement agreement on May 3, Ms. White's later regrets are irrelevant and do not affect the validity and enforceability of the agreement.

The Court finds that the Motion to Enforce Settlement Agreement and Dismiss With Prejudice should be granted because the settlement agreement of May 3, 2012 and its essential terms was accepted and entered into knowingly and voluntarily. Accordingly, the Court rejects Ms.

White's objections to the Report and Recommendation.

### III. CONCLUSION

Having reviewed the Report and Recommendation and finding no error therein upon employing a *de novo* review, the Court **ADOPTS** the Report and Recommendation in its entirety [DE 31]. Accordingly, the Court now **GRANTS** Defendant's Sealed Motion to Enforce Settlement and Dismiss with Prejudice [DE 21], **ORDERS** counsel and Ms. White to execute the settlement agreement [DE 21-6] within twenty-eight (28) days of the date of this order and Lowe's to tender the agreed upon consideration. Once the Court is notified of the execution of the settlment agreement, or of either party's refusal to execute the settlement agreement, and the exchange of the agreed upon consideration, the Court will order the case dismissed with prejudice.

SO ORDERED.

ENTERED:  November 13, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court